**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHADWICK GILMER,<br><br>*Plaintiff*,<br><br>v.<br><br>MARKWAYNE MULLIN,<br><br>*Defendant.*[1] | No. 25-cv-02753 (DLF) |

**MEMORANDUM OPINION AND ORDER**

Chadwick Gilmer brings this action against the Secretary of the U.S. Department of Homeland Security, alleging that he was discriminated against because of his sexual orientation and retaliated against for his participation in protected activity, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and discriminated against on the basis of his age and retaliated against for his participation in protected activity, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* Before the Court is the Secretary's Motion to Dismiss, Dkt. 9. For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

Gilmer is a gay man over the age of forty who was employed at the Department of Homeland Security (DHS) from April 2016 to September 2023. Compl. ¶¶ 9, 11, Dkt. 1. During that time, he served as the Deputy Chief of Staff and Director of the Executive Secretariat for DHS's Office of Strategy, Policy, and Plans (PLCY). *Id.* ¶ 9.

[1] Consistent with Federal Rule of Civil Procedure 25(d), the current Secretary is substituted as the defendant.

Tracy Pakulniewicz joined PLCY as Chief of Staff on or before January 3, 2023. *Id.* ¶ 10. Pakulniewicz thereafter became Gilmer's direct supervisor. *Id.*

Gilmer's claims stem from actions that occurred after Pakulniewicz's appointment. *See id.* ¶¶ 11, 22. On January 5, 2023, after Gilmer returned from a day of sick leave, Pakulniewicz asked whether she should anticipate similar unexpected absences in the future and questioned whether Gilmer was sufficiently healthy to continue in his role. *Id.* ¶ 12. In early February 2023, after a meeting during which the Under Secretary of PLCY made errors that Gilmer had attempted to prevent, Pakulniewicz asked Gilmer, "[W]hat would a Deputy [Chief of Staff] have done in this situation?" *Id.* ¶ 13. When Gilmer showed Pakulniewicz records of his efforts to prevent the errors, she responded, "You seem so defensive." *Id.*

Following these incidents, Gilmer raised with Pakulniewicz concerns about their working relationship and the frequency of her "criticism and hostility." *Id.* ¶ 14. During the conversation, Gilmer told Pakulniewicz that he had experienced discrimination in former employment positions because of his sexual orientation. *Id.* In response, Pakulniewicz asked Gilmer whether he had ever been called "queer" or "faggot" in PLCY. *Id.*

Gilmer immediately contacted DHS's Office of Inspector General hotline to report Pakulniewicz's conduct and to request information about the process for filing an Equal Employment Opportunity (EEO) complaint. *Id.* ¶ 15. An Office of Inspector General official directed him to DHS's Office for Civil Rights and Civil Liberties Anti-Harassment Unit. *Id.* Gilmer, in turn, contacted PLCY's Director of Operations, explained what the Office of Inspector General official had told him, and stated that he wished to file an EEO complaint. *Id.* The Director of Operations provided Gilmer with the Anti-Harassment Unit's contact information, and Gilmer

emailed the Unit to initiate what he understood to be an EEO complaint regarding Pakulniewicz's behavior. *Id*.

In February 2023, Gilmer notified Pakulniewicz that he had been invited to attend his former partner's naturalization ceremony in New York on March 15, 2023. *Id*. ¶ 16. Following all appropriate procedures for taking time off from work, Gilmer requested and obtained Pakulniewicz's approval to attend the ceremony. *Id*. Gilmer and Pakulniewicz had a routine meeting scheduled for March 16, 2023. *See id*. ¶¶ 16–17. At 12:19 a.m. the night before, Pakulniewicz sent Gilmer an email "instructing him to recognize the employee who was then serving as deputy to his position because March 15, 2023, had been a busy day at PLCY." *Id*. ¶ 16. At the meeting itself, Pakulniewicz informed Gilmer that his Deputy Chief of Staff title was being "remove[d]" and that his title would revert to Director of the Executive Secretariat, effective April 9, 2023. *Id*. ¶ 17 (citation modified). Viewing the title change as retaliation for his decision to file an EEO complaint, Gilmer reported Pakulniewicz's conduct to the Anti-Harassment Unit. *Id*.

In May 2023, Pakulniewicz asked Gilmer to counsel a younger male employee who had written an email that she deemed inappropriate. *Id*. ¶ 18. When Gilmer asked Pakulniewicz why she assigned him to reprimand the employee, she told him that "several employees" believed that he showed the employee preferential treatment. *Id*. (citation modified). Pakulniewicz also accused Gilmer of carrying on a sexual relationship with him. *Id*. The employee later told Gilmer that he was leaving for another DHS position due to Pakulniewicz's discrimination and harassment, including her suggestion that his working relationship with Gilmer was inappropriate. *Id*. ¶ 19.

On June 21, 2023, Pakulniewicz gave Gilmer a six-page "Letter of Expectations" that "notif[ied] Gilmer of her expectations" and indicated that "his failure to meet those expectations

could lead to further adverse action." *Id.* ¶ 20 (citation modified). When Gilmer asked whether the memorandum was being issued to all PLCY employees or only to him, Pakulniewicz refused to answer. *Id.* Gilmer confirmed with other staff members under his supervision that they had not received similar memoranda, and PLCY's Director of Operations was "unfamiliar with the document." *Id.*

Around the same time, a bisexual female employee told Gilmer that she was pursuing other employment in part because she felt personally attacked and frequently harassed by Pakulniewicz. *Id.* ¶ 21. The employee had also filed a purported EEO complaint with the Anti-Harassment Unit. *Id.* In August 2023, Gilmer submitted an additional affidavit to be included with his active complaint with the Anti-Harassment Unit. *Id.*

Gilmer left his position at PLCY on September 23, 2023. *Id.* ¶ 22. Before leaving, he emailed the Anti-Harassment Unit to ask about the status of his complaint. *Id.* A representative told him that his complaint "was being processed and that no action had been taken on it thus far." *Id.*

Around January 2024, a representative from the Anti-Harassment Unit contacted Gilmer and informed him that the Unit was not the proper office to handle an EEO complaint, notwithstanding his understanding of the prior directions from the Office of Inspector General, the Anti-Harassment Unit, or others. *Id.* ¶ 23. The representative explained that the Unit would not provide him with its report of findings and that he would not "be updated on the outcome of any actions taken by Pakulniewicz's supervisory chain." *Id.* The representative advised Gilmer that he could pursue the Anti-Harassment Unit complaint, withdraw it, and/or file a complaint through the EEO process. *Id.* ¶ 24. Gilmer decided to withdraw his complaint from the Anti-Harassment Unit and initiate an EEO complaint. *Id.*

Gilmer contacted an EEO Counselor on March 19, 2024, *id.* ¶ 26, and ultimately filed a formal Complaint of Employment Discrimination on May 23, 2024, *id.* ¶ 27. On June 13, 2024, DHS's Office for Civil Rights and Civil Liberties dismissed the complaint for failure to contact an EEO Counselor within 45 days of the allegedly discriminatory conduct. *Id.* Gilmer appealed, arguing that the delay was excused by his justifiable reliance on the advice of DHS officials and that the filing of his Anti-Harassment Unit complaint triggered equitable tolling. *Id.* DHS opposed the appeal, relying on a March 8, 2023 letter from the Anti-Harassment Unit that DHS claimed had put Gilmer on notice of the "rights and procedures associated with invoking the EEO process." *Id.*

The Equal Employment Opportunity Commission affirmed the dismissal. *Id.* ¶ 28. On March 7, 2025, Gilmer sought reconsideration, arguing that multiple DHS officials had misdirected him to the Anti-Harassment Unit and that the March 8, 2023 letter from the Anti-Harassment Unit was first provided as an attachment to DHS's opposition brief on appeal and thus "was not a part of the record of the case." *Id.* ¶ 29. The Commission denied reconsideration on May 22, 2025, and notified Gilmer of his right to file a civil action within 90 days. *Id.* ¶ 30.

Gilmer filed this action on August 20, 2025. His complaint alleges four claims: discrimination on the basis of age, in violation of the ADEA (Count I), *id.* ¶¶ 41–46; discrimination on the basis of protected activity, in violation of the ADEA (Count II), *id.* ¶¶ 47–52; discrimination on the basis of sexual orientation, in violation of Title VII (Count III), *id.* ¶¶ 53–58; and discrimination on the basis of protected activity, in violation of Title VII (Count IV), *id.* ¶¶ 59–63.

The Secretary has moved to dismiss Gilmer's complaint for failure to state a claim. *See* Mot. to Dismiss 3, Dkt. 9.

## II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While this standard does not amount to a specific "probability requirement," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation modified); *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (citation modified).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (citation modified). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation modified). And an "unadorned, the-defendant-unlawfully-harmed-me accusation" is not credited. *Id.* Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states

a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the Court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, documents upon which the complaint necessarily relies, and judicially noticeable materials. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Gray v. Staley*, 310 F.R.D. 32, 37 (D.D.C. 2015).

## III. ANALYSIS

### A. Gilmer Did Not Timely Exhaust His Claims

"An employee of the federal government who believes that [h]e has been the subject of unlawful discrimination must 'initiate contact' with an EEO Counselor in h[is] agency 'within 45 days of the date of the matter alleged to be discriminatory.'" *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (quoting 29 C.F.R. § 1614.105(a)(1)). "Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government, a court may not consider a discrimination claim that has not been exhausted in this manner absent a basis for equitable tolling." *Id.* (citation modified).

Gilmer did not initiate the administrative complaint process within this mandatory time period. The latest alleged discriminatory action in this case occurred on September 23, 2023, the date that Gilmer left his position. *See* Compl. ¶ 22; Opp'n to Mot. to Dismiss (Opp'n) 10, Dkt. 11. As Gilmer himself acknowledges, that date "establish[ed] a deadline of November 7, 2023,

for [Gilmer] to initiate contact with an EEO Counselor." Opp'n 10. Because Gilmer first consulted with an EEO counselor on March 19, 2024, Compl. ¶ 26, he did not timely exhaust his claims.[2]

**B. Gilmer Has Not Met His Burden to Establish Entitlement to Regulatory Tolling or to Equitable Tolling or Estoppel**

1. *29 C.F.R. § 1614.105(a)(2)*

Gilmer argues that his claims are subject to mandatory regulatory tolling because his "failure to contact an EEO Counselor within the timeframe established by statute" was the result of his "justified reliance on poor advice given to him by two different DHS officials." Opp'n 9–10; *see id.* at 9–14. In support of this argument, he notes that he "attempted to initiate his EEO complaint in February 2023, well within 45 days of the then-ongoing discriminatory acts perpetrated by Pakulniewicz" and in "reasonable reliance on the false representations of two separate officers of the Agency." *Id.* at 11. He further argues that, once he was informed of the proper process through which to file his EEO complaint, he "obtained counsel and contacted an EEO Counselor within the 45-day deadline established by C.F.R. § 1614.105(a)(1)." *Id.* at 12.[3]

[2] Gilmer neither disputes the untimeliness of his consultation, *see* Compl. ¶ 27; Opp'n 9–10, nor argues that his outreach to the Anti-Harassment Unit was itself sufficient to satisfy the 45-day deadline, *see Nichols v. Vilsack*, No. 13-cv-1502, 2015 WL 9581799, at *8 n.6 (D.D.C. Dec. 30, 2015) (collecting cases holding that the EEO counseling requirement may be satisfied when an employee raises their claims with supervisors or management); *see also Miller v. Hersman*, 594 F.3d 8, 11 n.1 (D.C. Cir. 2010) (outreach to "agency official logically connected with the EEO process" may, under certain circumstances, "satisf[y] the criterion of EEO counselor contact" (citation modified)). In any event, the Court is skeptical of such an argument here. *See Carter v. Greenspan*, 304 F. Supp. 2d 13, 23–24 & n.10 (D.D.C. 2004) ("[T]he fact that Mr. Carter engaged in an internal dispute resolution procedure with his supervisors and a human resources representative cannot replace the required initial contact with an EEO counselor within 45 days of the allegedly offensive incident.").

[3] It is not clear when Gilmer first became aware of the EEO complaint process and the 45-day deadline for initiating an EEO complaint. He alleges in his Complaint that the Anti-Harassment Unit explained the proper process "[i]n or about January 2024," Compl. ¶ 23; *see id.* ¶¶ 23–24, and that his initial contact with an EEO counselor on March 19, 2024, was "within 45 days of being informed about the proper process," *id.* ¶ 26. In his opposition, however, he suggests that

Because "[his] untimeliness was caused by DHS's actions in misleading him regarding how to . . . initiate a complaint," *id.*, and his "justifiable reliance on the information provided to him by Agency officials," he argues, "the 45-day deadline established by C.F.R. § 1614.105(a)(1) was mandatorily tolled" pursuant to 29 C.F.R. § 1614.105(a)(2), *id.* at 13.

Regulatory tolling is not appropriate here. Section 1614.105(a)(2) provides that the 45-day deadline must be extended when, as relevant, "the individual shows that he or she was not notified of the time limits and was not otherwise aware of them . . . [or] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2). The D.C. Circuit has held, however, that the provision does not apply where the individual had "constructive notice" of the time limit. *Harris v. Gonzales*, 488 F.3d 442, 445 (D.C. Cir. 2007). The D.C. Circuit has further adopted a two-step inquiry for assessing constructive notice that asks: (1) "whether notification of the time requirements was provided"; and (2) "whether the notification was reasonably geared to inform the complainant of the time limits." *Id.* (citation modified). The plaintiff has the "burden of pleading and proving equitable reasons to excuse his failure to comply with the 45-day requirement under 29 C.F.R. § 1614.105(a)(2)." *O'Neal v. England*, No. 03-5261, 2004 WL 758965, at *1 (D.C. Cir. Apr. 7, 2004) (per curiam).

Gilmer had constructive notice of the 45-day time limit. In an email dated March 1, 2023, a DHS official provided him with the Anti-Harassment Unit's contact information, along with DHS's anti-harassment materials. *See* Mot. to Dismiss, Ex. B, at 1, Dkt. 9-2; *see also* Compl.

---

he became aware of the proper process in *February* 2024. *See* Opp'n 11–12. That discrepancy could impact whether Gilmer's complaint was timely even should the 45-deadline be tolled. *See* Reply in Supp. of Mot. to Dismiss (Reply) 6–7, Dkt. 12. Because the Court finds that Gilmer's claims are not subject to mandatory regulatory tolling, it need not resolve this issue.

¶ 15; Reply 2–3. The materials explained that the Anti-Harassment Unit's complaint process was separate from the EEO process and did not affect any EEO deadlines:

> An employee's use of the reporting procedure referenced in this Directive, or in a Component's Anti-Harassment Reporting Procedure, does not result in the filing of an EEO complaint, nor does it take the place of such a complaint. . . . Employees wishing to file an EEO complaint should contact their servicing Component EEO Office or Civil Rights Office within 45 calendar days of the most recent incident of alleged harassment, irrespective of whether they use the reporting procedure referenced in this Directive. Use of the reporting procedure referenced in this Directive does not toll, or affect in any way, the deadlines or time limits associated with the EEO complaint process.

Mot. to Dismiss, Ex. C, at 4–5, Dkt. 9-3; *see* Mot. to Dismiss, Ex. D, at 11, Dkt. 9-4 (similar). Likewise, in a correspondence dated March 8, 2023, the Director of DHS's Alternative Dispute Resolution Program and Anti-Harassment Unit confirmed receipt of Gilmer's harassment complaint and specifically informed him of the separate process and timeline for EEO complaints. *See* Mot. to Dismiss, Ex. F, at 1, Dkt. 9-6. That correspondence stated, in relevant part:

> If you believe that your allegations are also the result of discrimination because of your race, sex (including pregnancy, sexual orientation or sexual stereotyping), color, national origin, age, disability, religion or genetic information, you may also a [*sic*] file a concurrent complaint with the DHS-HQ Equal Employment Office (DHS-HQ EEO). . . . You must contact the DHS-HQ withing [*sic*] **45 calendar days** of the alleged discriminatory act or when you became aware of the alleged discriminatory act.
>
> Please note that although the investigation process utilized here with [*sic*] be prompt, thorough and impartial, it is separate from the EEO complaint process described in 29 CFR Part 1614. The filing of a report of harassment with the DHS-HQ AHU does not preclude a concurrent filing of an EEO complaint nor does it toll any time limits associated with filing of such a complaint.

*Id.* This "clear" and "specific" language, *Norden v. Samper*, 544 F. Supp. 2d 43, 48 (D.D.C. 2008), provided Gilmer with "all relevant information," *Aceto v. England*, 328 F. Supp. 2d 1, 6 (D.D.C. 2004), and was "reasonably geared to inform" him of the EEO complaint process, *Harris*, 488 F.3d at 445 (citation modified); *see Norden*, 544 F. Supp. 2d at 47–48 (constructive notice where "EEO posters were located on the departmental bulletin boards, near the staff cafeteria, near a staff

meeting room, near the EEO Office, and near the Director's office" and contained "clear" language, with "specific information about the 45-day limit . . . in boldface"). Accordingly, the communications were sufficient to give Gilmer constructive notice of the 45-day deadline.

Gilmer argues that the Court cannot consider the March 8, 2023 correspondence because it was "not part of the administrative record at DHS" and was "provided for the first time as an attachment to the Agency's Brief in Opposition to Appeal" before the Equal Employment Opportunity Commission. Opp'n 14 (citation modified); *see* Compl. ¶¶ 27, 29. But Gilmer neither addresses the March 1, 2023 email nor disputes that the Court may treat that email as a document upon which the Complaint "necessarily relies." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citation modified); *see* Compl. ¶ 15 (discussing email correspondences in which Gilmer sought out and obtained contact information for the Anti-Harassment Unit); *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016) ("[A] document need not be mentioned by name to be considered referred to or incorporated by reference into the complaint." (citation modified)). That correspondence, along with its attachments, was alone sufficient to provide constructive notice. *See* Mot. to Dismiss 7–9 (arguing that the March 1, 2023 email put Gilmer on notice of the EEO time requirements); *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

2. *Equitable Tolling and Equitable Estoppel*

Gilmer separately suggests, albeit obliquely, that the Court should exercise its equitable power to excuse his late filing in light of his reliance on DHS officials' allegedly misleading representations regarding how to initiate an EEO complaint. *See* Opp'n 12 (citing *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997)). Such relief is not warranted here.

"[T]he administrative time limits created by the [Equal Employment Opportunity Commission] . . . functio[n] like statutes of limitations" and "are subject to equitable tolling, estoppel, and waiver." *Bowden*, 106 F.3d at 437. "Equitable estoppel precludes a defendant, because of his own inequitable conduct[,] from invoking a statute of limitations, and equitable tolling is based on the plaintiff's inability to obtain vital information bearing on the existence of his claim despite all due diligence. *Dudley v. SEED Sch. of Washington, D.C.*, No. 24-cv-1300, 2025 WL 2097571, at *3 (D.D.C. July 25, 2025) (citation modified). "Thus, while the appropriateness of estoppel depends on the actions of the defendant, the appropriateness of tolling is determined by the actions of the plaintiff." *Id.* (citation modified). "[W]hen it is alleged that an untimely filing was a result of conduct by the defendant, the plaintiff must be able to point to some type of affirmative misconduct or misleading information regarding the filing deadline by the defendant." *Cristwell v. Veneman*, 224 F. Supp. 2d 54, 60 (D.D.C. 2002) (citation modified); *see Washington v. WMATA*, 160 F.3d 750, 752–53 (D.C. Cir. 1998). In contrast, a plaintiff "is entitled to equitable tolling only if [he] shows" that (1) he "has been pursuing [his] rights diligently"; and (2) "some extraordinary circumstance stood in [his] way and prevented timely filing." *Dyson v. District of Columbia*, 710 F.3d 415, 421 (D.C. Cir. 2013) (citation modified). Courts will equitably toll deadlines "only in extraordinary and carefully circumscribed instances." *Id.* (citation modified); *see Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).

Gilmer has not met his burden of pleading facts sufficient to establish entitlement to equitable estoppel or equitable tolling here. *See Bowden*, 106 F.3d at 437.

To start, Gilmer has not adequately alleged that DHS officials "engaged in affirmative misconduct" or "misled [him] about the running of [the] limitations period." *Washington*, 160 F.3d at 753 (citation modified). He has not alleged any affirmative misconduct on the part of DHS

officials or that any official provided him with inaccurate information regarding the 45-day deadline itself. Furthermore, even assuming that Gilmer explicitly stated that he wished to file an EEO complaint and received erroneous instructions on how to do so, *but see* Mot. to Dismiss, Ex. B, at 1 ("Can you please provide me with the information I need to initiate a harassment claim?"), an agency's mere "provision of erroneous information" typically "cannot give rise to an equitable estoppel claim against it," *Rahimi v. Weinstein*, 271 F. Supp. 3d 98, 104 (D.D.C. 2017) (citation modified); *see id.* at 103–04 (citing *OPM v. Richmond*, 496 U.S. 414, 415–16, 421 (1990)); *cf. Deaf Smith Cnty. Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1214 (D.C. Cir. 1998) (plaintiff could not "avoid [an] exhaustion requirement on the ground that [agency] officials erroneously advised him of the futility of pursuing his administrative remedies").

In any event, Gilmer's argument ignores the March 1, 2023 email, discussed above, in which an agency official provided him with DHS anti-harassment materials that explained that the Anti-Harassment Unit process was separate from the EEO process and would not toll the EEO deadline. *See generally* Mot. to Dismiss, Exs. B, C, D. That correspondence neither "misle[d]" Gilmer nor "concealed facts [he] needed to assert his . . . rights." *Gonzalez v. Clinton*, No. 09-cv-1026, 2011 WL 13273217, at *6 n.5 (D.D.C. June 24, 2011) (citation modified). Rather, it clarified the applicable processes. Accordingly, this case is not one in which "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96; *see Washington*, 160 F.3d at 752–53. In light of that communication, the Court does not find equitable estoppel appropriate here. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998) ("[E]quitable tolling and estoppel, which ask whether equity requires extending a limitations period, are for the judge to apply, using her discretion, regardless of the presence of a factual dispute."); *see also Alston v. District of Columbia*, 772 F. Supp. 3d 43,

55 (D.D.C. 2025) ("[W]hen the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail." (citation modified)).

Finally, Gilmer has similarly failed to plead facts warranting equitable tolling. Again, the March 1, 2023 email attachments clearly explained the interaction of the Anti-Harassment Unit and EEO complaint processes and warned him of the 45-day deadline. *See generally* Mot. to Dismiss, Exs. B, C, D. Gilmer's failure to adhere to that warning undercuts any claim of "diligen[ce]" and falls short of an "extraordinary circumstance . . . prevent[ing] timely filing." *Dyson*, 710 F.3d at 421 (citation modified).

For these reasons, the Court finds that Gilmer has not met his "burden of pleading . . . facts supporting equitable avoidance of [the Secretary's exhaustion] defense." *Bowden*, 106 F.3d at 437.

* * *

For the foregoing reasons, it is

**ORDERED** that the defendant's Motion to Dismiss, Dkt. 9, is **GRANTED**. It is further

**ORDERED** that the plaintiff shall file any motion to amend his complaint on or before October 12, 2026. If the plaintiff fails to file a motion by that date, the Court will direct the Clerk of Court to close this case.

**SO ORDERED.**

DABNEY L. FRIEDRICH
United States District Judge

September 21, 2026